# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>PATRICK MULLANEY,<br><br>                Defendants. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS**<br><br>**Case No.  4:08CR239-E-BLW** |

This matter is before the court on Defendant Patrick Mullaney's Motion to Suppress Evidence Gained by Search of Automobile brought on the grounds that the search of his automobile was unconstitutional under the Fourth Amendment and, more particularly, *Arizona v. Gant*, 129 S. Ct. 1710 (2009) .  The court[1] held an evidentiary hearing and heard legal arguments on May 19, 2009.  At the hearing, Defendant appeared and was represented by Steven V. Richert, and Plaintiff was represented by Michael J. Fica.  The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties as well as the law and facts relating to this motion.  Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Memorandum Decision and Order.

---

[1]  The United States District Court for the District of Idaho assigned this matter to Judge Dale A. Kimball, United States District Judge, District of Utah, while he was sitting by special designation in the District of Idaho.

## A. FINDINGS OF FACT

On September 8, 2008, Idaho State Police Trooper Robert Christiansen was patrolling Interstate 15 in Bannock County. At 4:15 p.m., he stopped a Black Dodge Intrepid at milepost 36 for traveling 71 mph in a 65 mph construction zone. Christiansen approached the car and made contact with the driver. The driver indicated that his name was Joseph Patrick Mullaney. Christiansen asked Mullaney for his identification and car registration information. Mullaney said that he had just purchased the car and had no new documents indicating that he owned it.

Christiansen noticed that Mullaney was very nervous, was speaking quickly, had exaggerated reflexes, and appeared to be under the influence of controlled substances. Christiansen further noticed that Mullaney had a twitch and his eyes were red, and he was speaking quickly.

Christiansen had police dispatch run a driver license check, which revealed that Mullaney's driver license was suspended. At that time, he arrested Mullaney. Christiansen testified that he often arrests people for driving on a suspended license.

Christiansen then made contact with the passenger. The passenger did not have identification, but gave him a name and date of birth. Christiansen had dispatch check the name and date of birth which revealed that the passenger had expired and suspended out-of-state licenses. Christiansen detained the passenger for his safety. Christiansen noticed that the passenger was also acting nervous, was itching, and developing rashes, which is also common with the use of controlled substances.

Christiansen did not do a field sobriety test of Mullaney or his passenger. But he detained

2

both of them in separate patrol cars.  Another officer was on the scene assisting Christiansen.

Because neither Mullaney nor his passenger had a valid driver license, neither could drive the automobile from the side of the road.  In such circumstances, police policy requires that the vehicle be towed.  Christiansen testified that there is no discretion in towing the vehicle when there is no available driver to remove the vehicle from the scene.  Policy procedures also dictate that the officer must conduct an inventory search prior to releasing the vehicle to the tow company.  Christiansen testified that he is familiar with the inventory search procedures for impounded vehicles and has conducted such searches hundreds of times.

At this point, Christiansen believed that he could validly conduct a search incident to arrest and an inventory search of the vehicle.  When a car needs to be impounded, he testified that he does both types of searches at the same time.  When Christiansen put his head in the vehicle, he smelled a chemical smell that he associated from his years of experience and training with the smell of a used methamphetamine pipe.  At that point, based on his observations of Mullaney and his passenger as well as the presence of the odor, Christiansen believed that he had probable cause to search for methamphetamine.  Christiansen, however, testified that he believes there would be little difference between a probable cause search and an inventory search.  Christiansen stated that with an inventory search as opposed to an investigatory search, he must list everything he finds on an inventory form.  Also, when conducting an investigatory search he may not look everywhere as is required in an inventory search.

According to the vehicle impound and inventory police procedures, Christiansen was required to search "[a]ny container, whether locked or unlocked (including glove box)" and

3

inventory the contents.   When conducting an inventory search, Christiansen states he moves throughout the vehicle noting all contents because officers are required to search everything in the car when a car is impounded for liability and safety purposes.  For example, he stated that a person may have a rare coin in the ash tray that they claim is taken or lost.  As for containers, he testified that officers check anything that could be holding something else.

When Christiansen began his search of the vehicle, he opened the lid of the ash tray to look for any content that may be in that compartment.  He stated that he often find contents need to be noted on the inventory sheet in the ash tray compartment, such as money, driver licenses, watches, etc. When he opened the lid, Christiansen noticed that the metal tray inside the compartment was sitting up and out of place like something was keeping it from sitting properly. Christiansen testified that when conducting an inventory search he always looks for why something is askew.

Christiansen lifted the metal tray out and saw a glass methamphetamine pipe and bag with white substance in it.  The white substance in the bag was field tested as presumptive positive for methamphetamine.  Because of the quantity of methamphetamine, Christiansen called another officer, Officer Paul Olsen, who is assigned to the narcotics unit.  Olsen told Christiansen to stop his search and put the methamphetamine back where he found it.  The officer stated that narcotics officers would conduct a search of the vehicle.

The government submitted the inventory sheet relevant to this case.  The sheet identifies several items found in the vehicle.  It also states that the officers retained the drugs that were found.  After the inventory was conducted, the car was released by Christiansen and  Olsen to the

4

towing company.

Sergeant Matthew Manning, Christiansen's supervisor, also testified that he reviewed Christiansen's report in this case and spoke to Christiansen about the search of Mullaney's vehicle. Manning testified that when conducting a search under the vehicle impound and inventory procedures, he always looks in the ash tray and he expects officers under his command to also do it in every case. Manning confirmed that in his experience people often put money, jewelry, or contraband in the ashtray compartment. He also testified that he has searched other cars when something was under the ash tray and it looked askew. He believes that looking under the tray when it looks askew is consistent with the policy. After his review of this traffic stop, he believes that Christiansen's inventory search was consistent with policy and is what would be expected of him.

## B. CONCLUSIONS OF LAW

Mullaney argues that the search of his vehicle cannot be justified without a warrant. Mullaney relies on *Arizona v. Gant*, 129 S. Ct. 1710 (2009). Under *Gant,*

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at 1723-24. In this case, after Mullaney was arrested for driving on a suspended license, he and his passenger were detained in patrol cars. In addition, there was no reason to believe that there was any evidence in his vehicle relevant to Mullaney's arrest for driving on a suspended

license.  Accordingly, the search incident to arrest exception to the Fourth Amendment's warrant requirement is not available in this case.

Nonetheless, according to *Gant*, officers may search a vehicle if they obtain a warrant or show that another exception to the warrant requirement applies.  It is undisputed that no warrant was obtained in this case.  The government, however, asserts that independent of the search incident to arrest exception, the inventory search exception applies.  There was no passenger available to drive the vehicle from the scene and state police procedures required that the vehicle be impounded and inventoried.

When a vehicle must be impounded, police may conduct an inventory search according to standard procedures of the police department.  *South Dakota v. Opperman*, 428 U.S. 364, 369 (1975).  In *Opperman*, the Court summarized the three reasons for an inventory or "caretaking" search: (1) to protect the vehicle owner's property while the vehicle remains in police custody; (2) to protect the police against claims over lost or stolen property; and (3) to protect the police from potential danger from hazardous materials that could be present in the vehicle.  *Id.*

The Idaho State Police Procedure for vehicle impound and inventory provides that an inventory search must be conducted of impounded vehicles.  In conducting the search the officer must open and inventory the contents of any container, whether locked or unlocked.  Mullaney argues that this policy is unduly broad because it provides no limits.

The court does not believe that it needs to determine the constitutionality of the policy as whole based on the circumstances in this case.  The specific facts of this case indicate that Christiansen opened the ash tray compartment to look for contents.  Both officers who testified

stated that valuable property is often found in the ash tray compartment and a search of that area is necessary and expected under the policy.  Because items are often stored in this compartment, the court finds it reasonable for Christiansen to have looked in this compartment for purposes of his inventory search and to have lifted the metal tray when it appeared that something was under it.  Whether or not the Idaho State Police impound and inventory policy is too broad, the court concludes that Christiansen's search in this case was limited in scope to the extent necessary to carry out the caretaking function.  Therefore, the search was valid under the inventory exception to the Fourth Amendment's warrant requirement.

Because the court concludes the search is constitutionally valid, it need not determine whether there was also probable cause to search for controlled substances based the passengers' behaviors and the odor.  *But see United States v. Johns*, 469 U.S. 478, 482 (1985); *United States v. Garcia-Rodriguez*, 558 F.2d 956, 964 (9th Cir. 1977).

### C. CONCLUSION

Based on the foregoing, it is hereby ordered that Defendant Patrick Mullaney's Motion to Suppress Evidence Gained by Search of Automobile is DENIED.

DATED this 27th day of May, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

7